## Case No. 4,091.

### The D. R. MARTIN.
### The MOONACHIE.

[10 Ben. 532.] [1]

District Court, E. D. New York. July, 1879.

COLLISION AT FERRY-SLIP—STEAMBOAT AND FERRY-BOAT—SPEED—NEGLIGENCE.

1. Where a fast steamboat on her regular run down the North river to Coney Island was making for a landing, near the Hoboken ferry, and came at full speed close in to the piers, and struck a ferry-boat just coming out of her slip: *Held*, that the steamboat was in fault for running at such high speed in that locality, with knowledge of the position of the ferry-slip and the presence there of the ferry-boat.

2. The ferry-boat was not in fault for attempting to back, to avoid the collision, instead of going ahead.

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

3. To attempt to pass a ferry-slip at such a rate of speed as renders it impossible to stop in time to avoid hitting a ferry-boat, in case one should come out, is negligence.

A ferry-boat [the Moonachie] of the Hoboken Ferry Co., running between New York and Hoboken, N. J., was coming out of her slip on the New York side, a little behind time, but very slowly, and her sister-boat was lying in the stream waiting to go in. The D. R. Martin, a steamboat able to run 15 to 18 miles an hour, and then plying between various points in New York and Coney Island, was making for her landing, a short distance below the ferry-slip; and being pressed by another vessel, came in very close to the piers and without slackening speed. Neither vessel could see the other, till the Moonachie began to show outside the long slip. She came out at the slowest speed, immediately saw the D. R. Martin, and backed into the slip again, but not in time to escape collision. Immediately on seeing the ferry-boat, the pilot of the D. R. Martin rang to stop and reverse, adding the danger-signal; but the headway of the steamboat could not be checked, and she struck the ferry-boat on the forward quarter. Each vessel libelled the other for the damage done.

Abbett & Fuller, for ferry-boat.
P. Cantine, for steamboat.

BENEDICT, District Judge. The evidence given by the wheelsman who was at the wheel of the D. R. Martin with the pilot, and who is called as a witness by the owners of the D. R. Martin in respect to the collision which forms the subject of these two actions, is decisive of the controversy. It appears from the testimony of this witness, that the D. R. Martin on her down trip and when bound for her landing, at the end of the pier at the foot of Le Roy street, in the North river, felt obliged, by reason of a vessel approaching from below, to sheer in close to the piers. While the D. R. Martin was proceeding at her usual full speed, and approaching the Hoboken ferry, which is just above Le Roy street, the Hoboken ferry-boat Moonachie was observed by the pilot to be moving out of her slip on her regular trip from her ferry-slip in New York, to her slip in Hoboken. Immediately on seeing the ferry-boat at the mouth of the slip, the engine of the D. R. Martin was reversed with all possible speed, the danger-bell being given to the engineer to ensure the greatest activity on his part, notwithstanding which the D. R. Martin struck the ferry-boat just off the mouth of the slip, doing damage. It thus appears that the Martin was proceeding close along the piers towards the Hoboken ferry-slip, at such a rate of speed that it was impossible for her, after the ferry-boat came in sight moving out of the ferry-slip, to stop her headway before reaching the ferry-slip. That slip is so situated that by reason of sheds constructed upon the piers on each side, it is impossible for any one on board the ferry-boat to see a vessel coming down the river, until she is close at the mouth of the slip, and equally impossible for a boat approaching from above to see a ferry-boat moving out, until she appears at the mouth of the slip. This condition of the slip was known to those on board the D. R. Martin, who also knew that there was a ferry-boat in the slip about to come out, the latter fact being indicated by the presence of the inbound ferry-boat in full view waiting for the Moonachie to come out. Under circumstances such as these, it was negligence on the part of the Martin, when running near the piers and approaching the ferry-slip, to be going at a rate of speed that rendered it impossible for her to stop her headway before reaching the ferry-slip. I do not say that it was negligence for her to come down sufficiently near to the piers, above the ferry-slip, to enable her to make her landing at Le Roy street; but I do say that it was negligence to approach that ferry-slip at such a rate of speed as to render it impossible for her to stop in time to avoid hitting a ferry-boat, in case one should happen to come out at that time. Her ability to pass the slip in safety, at the rate she was going, was made to depend simply upon the chance that no boat should be coming out; and she had no right to run that risk. A lower rate of speed would have enabled her to make her landing without risk of collision, and no necessity existed warranting the rate of speed at which she was running. How many miles per hour she was running may be a subject of dispute—I do not undertake to fix the number; but there is no disputing the fact that the moment the ferry-boat appeared at the mouth of the slip, all the bells, including the danger-bell, were pulled on board the D. R. Martin, but it was found to be impossible to stop her before reaching the mouth of the slip. Such a speed in that locality I hold to be negligence.

I find no fault in the ferry-boat. for the weight of the evidence is that she was passing out of the slip at the lowest rate of speed possible. If I found the fact to be, as is contended by the D. R. Martin, that the ferry-boat was moving out at her full speed or nearly so, I should consider her in fault likewise, inasmuch as the character of that locality and slip requires the greatest care on the part of the ferry-boat, in moving out of the slip. But the weight of the evidence is that in this instance the ferry-boat was moving out as slowly as was possible. It is claimed that the ferry-boat was in fault for reversing her engines, and in endeavoring to get back into the slip, instead of going ahead when she saw the D. R. Martin. Several witnesses who saw the disaster express the opinion that there would have been no collision if the ferry-boat had kept on. The pilot of the Martin thinks that if the Moonachie had kept on instead of endeavoring to get back to the slip. he would have cleared

her by twenty feet. But if it was a mistake in the pilot to back when he did, it was not a fault that renders the ferry-boat liable, because it was caused by the danger created by the close approach of the Martin at a high and improper rate of speed.

There must be a decision in favor of the libellants, in the first case, with an order of reference to ascertain the amount of the damage. In the second case, the libel must be dismissed, with costs.